UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-145

| | | |
|---|---|---|
| TAWANA L. BETHEA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on plaintiff's (#10) and defendant's (#12) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

## FINDINGS AND CONCLUSIONS

**I.     Administrative History**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Act on November 5, 2013, alleging a period of disability with an onset date of October 1, 2013 (Tr. 10, 206-17). The Commissioner denied plaintiff's applications initially and upon reconsideration. (Tr. 127-150). At plaintiff's request, Administrative Law Judge Todd D. Jacobson ("the ALJ") held a hearing on her claims on June 30, 2016. (Tr. 37-68). After considering the hearing testimony and all of the evidence of record, on July 26, 2016, the ALJ issued a written decision finding that plaintiff was not disabled within the meaning of the Act. (Tr. 10-24). The Appeals Council denied plaintiff's request on June 14, 2017, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Having

-1-

exhausted her administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision.

## II.     Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity since October 1, 2013, the alleged onset date. (Tr. 12). At step two, the ALJ found that plaintiff has the following severe impairments: impairment of the spine; obesity, carpal tunnel syndrome; cubital tunnel syndrome; diabetes; anxiety; and depression. (Tr. 12). At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 13-14).

Then, before step four, the ALJ found that plaintiff had the RFC to perform light work, with the following exceptions and restrictions: plaintiff must be allowed to alternate between sitting and standing every thirty minutes; can occasionally climb ladders, stoop, and crouch; can frequently handle or finger with the bilateral upper extremities; can have no concentrated exposure

to hazards such as moving machinery or unprotected heights; and can perform simple, routine, and repetitive tasks in a stable work environment, with no production work. (Tr. 15).

At step four, the ALJ found that plaintiff's RFC prevents plaintiff from performing any past relevant work. (Tr. 22). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including information clerk, toll collector, and ticket taker. (Tr. 22-23). As a result, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. (Tr. 23).

**D. Discussion**

The court has closely read plaintiff's memorandum (#11) supporting her Motion for Summary Judgment (#10). Plaintiff argues that the ALJ erred in two ways: by improperly relying on testimony from a vocational expert ("VE") that conflicted with job qualifications in the Dictionary of Occupational Titles ("DOT"), and by failing to properly account for limitations that resulted in a flawed RFC. The court will consider each allegation in turn.

*a. The ALJ's reliance on VE testimony*

Plaintiff argues that the ALJ failed to properly inquire on various alleged inconsistencies between the VE's testimony and the DOT. First, plaintiff argues that the ALJ failed to explain what a "stable environment" was and that leaving the VE and the court to guess is improper. However, plaintiff fails to explain how this phrase may have been misinterpreted or show evidence of any misunderstanding or confusion about the term on the part of the VE. "The fact that the VE, who is 'highly trained and experienced,' did not express any confusion regarding this limitation reinforces that the VE understood what [a given term] meant." Williams v. Comm'r of Soc. Sec., 2015 WL 23544563, at *6 (N.D. W. Va.) (quoting White v. Colvin, 2013 WL 4026921, at *3

(D.Md. 2013)). Additionally, a wealth of case law includes the term "stable environment" and plaintiff does not cite any instance where a court had to guess at what the term meant. See Darby v. Berryhill, 2018 WL 310136, at *5-6 (WD.N.C. 2018); Watts v. Berryhill, 2017 WL 6001639, at *4 (W.D.N.C. 2017); White v. Colvin, 2016 WL 1600313, at *6 (W.D.N.C. 2016); Linares v. Colvin, 2015 WL 4389533, at *4 (W.D.N.C. 2015). As a result, the court finds that plaintiff's argument on this issue has no merit.

Second, plaintiff argues that, while the ALJ limited plaintiff to simple, routine, repetitive tasks, the DOT shows that positions suggested by the VE and relied upon by the ALJ are not limited to simple, routine, repetitive tasks, as they require General Educational Development ("GED") Reasoning Levels ranging from 2 to 4. GED levels range from Level 1 (lowest reasoning ability) to Level 6 (highest reasoning ability). Whether there is an apparent conflict between simple, routine, repetitive work and GED Level 3 is far from settled. The Fourth Circuit has yet to provide binding precedent on this issue, and in examining persuasive precedent elsewhere, the court has found that a circuit split exists. Compare Zavalin v. Colvin, 778 F.3d 842, 846-47 (9th Cir. 2015) (finding an apparent conflict exists) and Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (same) with Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (finding no apparent conflict exists) and Hillier v. Soc. Sec. Admin., 486 F.3d 359, 367 (8th Cir. 2007) (rejecting a *per se* conflict but noting tension between GED Level 3 and simple, routine, repetitive tasks). Indeed, even this district's case law is split on the matter. Compare Lorch v. Berryhill, 2017 WL 1234203 (W.D.N.C. 2017) (finding an apparent conflict exists) and Adkins v. Berryhill, 2017 WL 1089194 (W.D.N.C. 2017) (same) with Davis v. Berryhill, 2017 WL 4248811 (W.D.N.C. 2017) (finding no apparent conflict) and Martin v. Colvin, 2015 WL 9094738 (W.D.N.C. 2015) (same) and Carringer

v. Colvin, 2014 WL 1281122 (W.D.N.C. 2014) (same).

Here, the ALJ relied on the VE's testimony for jobs at three different levels, including ticket taker (Level 2), toll collector (Level 3), and information clerk (Level 4). As there is already a widespread dispute over whether an apparent conflict exists between simple, routine, repetitive work and Level 3 jobs, there is almost certainly an apparent conflict with Level 4 work. Further, the court finds the reasoning laid out by the Ninth Circuit and Tenth Circuit to be persuasive. See Zavalin, 778 F.3d at 846-47; Hackett, 395 F.3d at 1176. As such, the court agrees with the decisions of its colleagues in this district that adopted similar reasoning, and finds that an apparent conflict requiring further explanation exists between simple, routine, repetitive work and Level 3 jobs. See Lorch, 2017 WL 1234203; Adkins, 2017 WL 1089194.

However, the court cannot find the same holds true for the job of ticket taker, which is graded at Level 2. Broadly speaking, Level 2 jobs require the ability to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App. C, 1991 WL 688702 (1996). While plaintiff argues that an unpublished Fourth Circuit decision suggests that Level 2 jobs are similarly incompatible, that decision involved a plaintiff limited even further to only one- or two-step instructions, not a limitation of simple, routine, repetitive work. Henderson v. Colvin, 643 F. App'x. 273, 276-77 (4th Cir. 2016). This and other courts agree that such a ranking does not imply an apparent conflict with simple, routine, repetitive work, as do other circuits, including the Tenth Circuit in the same case that the court found persuasive above. Thacker v. Astrue, 2011 WL 7154218 (W.D.N.C. 2011); Weaver v. Colvin, 2013 WL 3989561 (M.D.N.C. 2013); McCullough v. Colvin, 2015 WL 4757278 (D.S.C. 2015); Hackett, 395 F.3d at

1175; Money v. Barnhart, 91 F. App'x. 210, 214 (3d Cir. 2004) (holding that working at Level 2 "would not contradict the mandate that [the] work be simple, routine and repetitive"). The record cited to by the ALJ shows that the job of ticket taker alone exists in significant numbers in the national economy, approximately 77,000 jobs. (Tr. 61). While there is no established minimum number to be satisfied, the Commissioner's burden has been satisfied in other matters on the basis of less than half as many jobs existing in the national economy. Cogar v. Colvin, 2014 WL 1713795 (W.D.N.C. 2014) (holding that 35,000 jobs nationally accounted for sufficient numbers). Thus, while the ALJ may have erred in failing to investigate an apparent conflict with the jobs of information clerk and toll collector, there was no apparent conflict with the job of ticket taker. As ticket taker alone is sufficient to meet the Commissioner's burden, the ALJ did not commit reversible error on this basis.

Plaintiff also argues that the jobs identified by the ALJ do not specify the amount of time spent standing or sitting, despite a limitation that plaintiff must alternate between sitting and standing every thirty minutes. Plaintiff cites to *O\*Net*, a database offered by the Department of Labor that provides statistics on particular aspects of jobs, including percent of time standing and sitting at a given job. Plaintiff argues that *O\*Net's* statistics show that 47 percent of ticket takers will be standing continually or almost continually, and another 47 percent are standing half the time or more. (Doc #11-11). However, the *O\*Net* page offered by plaintiff lumps in ticket taker with other jobs, including ushers and lobby attendants, rendering this support questionable at best. Id. At any rate, the court cannot find that this information created an apparent conflict with the DOT that the ALJ failed to inquire about. As such, the court finds that the ALJ did not commit reversible error on this basis.

### b. *The ALJ's analysis of plaintiff's RFC*

Next, plaintiff argues that the ALJ erred in his analysis of plaintiff's RFC. First, plaintiff argues that the ALJ erred by giving great weight to the opinion of Dr. Darolyn Hilts, the State agency psychological consultant, but failing to limit plaintiff to simple instructions even though Dr. Hilts opined that plaintiff could understand and remember simple instructions. (Tr. 121). However, that is not exactly what Dr. Hilts said.

Specifically, Dr. Hilts said that plaintiff was capable of understanding and remembering "at least simple instructions." (Tr. 121). Furthermore, this part of Dr. Hilts's opinion came in response to a question on a form that is designed to "ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities." POMS DI 25020.010. The actual mental RFC assessment is carried out elsewhere. (Tr. 121.) "In other words, [the form] aids the consultant in reaching an opinion but does not reflect the consultant's ultimate opinion on functionality." Watts v. Berryhill, 2017 WL 6001639 (2017 W.D.N.C.). As such, the court finds no inconsistency in the ALJ's analysis of plaintiff's RFC on this basis.

Finally, plaintiff argues that the ALJ failed to account for the accepted medical opinion that plaintiff may only function in a low-stress environment. (Tr. 121). However, the ALJ noted that opinion and held that plaintiff's RFC requires a "stable work environment" with "no production work." (Tr. 15). In doing so, the ALJ has accounted for plaintiff's need to work in a low-stress setting. See Watts, 2017 WL 6001639, at *6 (holding that plaintiff's RFC limited to simple, routine, repetitive work "at a non-production pace in a stable environment" accounted for findings that plaintiff needed "a low-stress setting"); Taylor v. Colvin, 2016 WL 1032345, at *6-

7 (W.D.N.C. 2016) (holding that plaintiff's RFC for "simple, routine, repetitive tasks in an environment that does not involve assembly line pace" accounted for a limitation of a "low stress, low production setting"). As a result, the ALJ did not commit reversible error on this issue.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#10) is **DENIED**, the Commissioner's Motion for Summary Judgment (#12) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: March 30, 2018

Max O. Cogburn Jr.
United States District Judge